Can you call the first case? J.M., S.M., S.M., and J.M. Minors. Will the lawyers who are going to be arguing please step up to the podium just for a minute? And let us know your names. Assistant State's Attorney, Gina DeVito. Assistant Public Attorney, Christopher Williams. Assistant Public Defender, Maurice Sykes. Hello. I know you. And how are the appellees intending to divide their time, or are they? Your Honors, the State will be adopting the guardian's argument. So we would just request a brief moment at the end of his argument to do that. Okay. And would the appellant like to save some time for rebuttal? Yes, please. I'd like to save five minutes for rebuttal. Okay. Do each side have 20 minutes? You do not have to use the whole 20 minutes, but you will have it. Also, as you probably know, this microphone does not amplify, only records. So keep your voices up, please. Mr. Sykes, you may start whenever you are ready. May it please the Court, good afternoon, Justice Baca, Justice Mikva, Justice Griffin. I'm Assistant Public Defender, Maurice Sykes, and I represent Iris. She's the mother of the four minors that are subject to this case, and we submit to the Court that Section 2-28 of the Juvenile Court Act is unconstitutional. It violates both substantive and procedural due process under both the Illinois and the U.S. Constitution. It violates the Constitution because it improperly mandates adoption and unnecessary termination of parole rights. It is therefore necessary to vacate the order which terminates the rights of Iris and remand with instructions that remove the mandate from the law. Okay. Before you go too far down that road, two questions. One is you did not file a reply brief, is that correct? I did not, correct. So then can you answer the question raised by the public guardian as to why that's not moot? Let me be clear. Are you talking about the goal in 2-28? Court review. Court review, okay. Post-termination of parental rights or pre-termination of parental rights? Pre-termination of parental rights. Which is when you can't consider guardianship until all the other goals have been eliminated. Correct. Yes. Okay. Why isn't that moot? It's not moot because we're at the point where we are terminating the parental rights and we're reviewing the process of what has happened, and that section in particular has tainted the whole process when you go through a procedural due process analysis. It determined everything. It put the cart before the horse. It told us what our outcome was going to be. Months and years ago. Yes. And as you know, there is a mechanism, because your office has tried to use it, to try to bring that issue before the court earlier in the process, correct? Yes. But you're saying since that's a discretionary appeal, not a mandatory appeal, the only way we can get this issue before you is now? Is that what you're saying? Yes, and it was not the way. I think it could have been preserved better at the trial level, but I met the legal resources division and I got what I got, and I recognized the issues from things that I had presented in the past and things that I was concerned about. So once you go down this route of termination, you know, once you go down the route, it's predestined is basically what you're saying. Yes, it's mandated by the statute that you can't do anything else. The judge sitting before as the trier on the termination hearing can't do anything but terminate the rights to get to the next step or have a hearing on the termination of the rights. You have to have a hearing. You have to make a finding by clearing convincing evidence to terminate. Yes. Okay. So I'll start. We first start by saying that our challenge to the statute prevents due process because the statute is not narrowly tailored and it does not use the standard of least restrictive means to achieve the government's interest. The response to such a challenge should be it is narrowly tailored and it does use the least restrictive means to achieve the government's compelling interest. Any response short of that is an attempt to reframe the issue, which I submit to the court. We are presenting before the court. Lawyers have a tendency to complicate relatively simple content. In the simplest terms, which constitution inspires an individual to risk his life to defend? A constitution that protects his family or a constitution that supports laws written to destroy his or her family? Today we are simply asking the court to remove the portion of the JCA, the Juvenile Court Act, that prefers the destruction of a fundamental right and causes the death of a family. It is not contested between the parties that the issues presented in the termination of parental rights hearing involve a choice in the matters of family right. This choice has been found to be a fundamental liberty and therefore must meet the strict scrutiny standard. I also argue this right is not the exclusive right of the parent but is also the right of the children and possibly other relatives that may be granted the standing to appear or not be represented in court. This fundamental right should be protected for all individuals potentially involved. The standard should include restraint, which considers the termination of parents' rights or the death of a family. I do not believe this court will find it acceptable for legislators to prefer a death penalty for all persons found guilty of a crime. It should be found equally unacceptable that unfit parents must overcome the improper mandate of having their parental rights removed. Well, even once, first let me be clear, you're not in any way contesting the finding that your client's right, that your client was unfit. You're not contesting that. No. She had an IQ of 57. And kids with special needs. Yes, and kids with special needs. She had many of the juvenile court evaluations, the JCC evaluations, which tried to give her services. She tried to participate in the services, but she was not successful. Right. So your objection is at the point after unfitness when there was a finding by the court that it was in the best interest, I think, of all four kids. Yes. Or that she terminate, that the court terminate her parental rights. Yes. Is it that finding that you're questioning, that finding of best interest? Well, I'm actually questioning the statute, not the finding. Okay. Because the law seems to be clear on those findings being available, and that it is possible that once you are found unfit, that at that point in time, you can now be found in the best interest of a minor to have your rights terminated. And it's arguable about what the standard should be. That should also be clear and convincing, but that's not my argument. And just to be clear, they terminated the rights of her youngest child even though the goal set was guardianship. Correct. Yes. So you can still set a goal of guardianship after you terminate parental rights? Well, yes. But in order to get to the guardianship, they had to go through the termination hearing. They terminated her rights. So now she doesn't really even get the benefits of a private guardianship, which allows residual rights, which allows the right to visit, which allows the right to determine how the children, the religious beliefs of the children. She has no rights whatsoever. However, should a judge down the line decide that the home is not appropriate for a goal, if the goal ever changes, they could find that the home that one minor is in is no longer appropriate and move the minor from that home simply because the foster parent is not willing to close it out and adopt it. And it's been done before. Or they could move the child that's in the guardianship home and then change the goal to adoption. Is that what you're saying? Either way. So every six months there's a permanency hearing. On the next month, the permanency hearing right after the termination of rights, they did enter a goal of private guardianship. For one child. For one child. The other two other children are in relative homes. Fictive kin as it may be, but they are still considered to be in a relative home. They would qualify for private guardianship. They would qualify for some of the other goals because incidentally I would say paragraph G of 2-28 also uses the same offensive language, that language that I'm asking the court to determine to be unconstitutional. But it rules out that goal also. And that goal actually speaks almost directly to this case where we are talking about the guardianship. The minor be in substitute care because he or she cannot be provided for in a home environment due to developmental disabilities or mental illness. That particularly goes to this case, but it goes on to say you have to rule out A through D before you even get to the home environment not appropriate. Yeah, but none of the kids were given that goal. None of the kids, so I'm just saying that incidentally that has the same language in it that I find is unconstitutional in paragraph G. Well, A is about returning them home, right? Yes. There's no problem with that goal. Not at all. Okay. What you have a problem with is putting adoption, putting substitute care pending determination of termination above guardianship. That's what you're really saying you're complaining, unhappy with. I'm more unhappy with them terminating the rights of a parent and then giving private guardianship, then entering the goal of private guardianship. Okay. And then the process which says that you can't even get to looking at private guardianship. I'm sorry, but that wasn't statutorily required. They did that. They could have found your client unfit, not terminated her rights, and entered a goal of guardianship, right? Yes. They didn't do that. They did not. But the statute would have allowed them to do that. There's nothing in the statute that says they can't do that. The statute says that they have to rule out adoption. In this case, adoption was only ruled out because the foster parent said, I don't want to do adoption. Okay. And that is another part of my argument, whereas you're giving the foster parents more rights than the biological parent. You're asserting to the custodian of the kids, and we appreciate the fact that in fact in one of our cases we selected the custodian of the kids. We don't want anything to change in terms of the placement of the kids. We're saying that those rights, those placements could be maintained without terminating our parental rights, without allowing us to be able to determine the religious upbringing of the minor, to allow us to have some visitation, to keep siblings from being not siblings anymore legally. But, of course, on the flip side is the loss of permanency. I mean, that's obviously what the legislature was concerned with. So I address that. The loss of permanency, the goal is best interests of the minors. Right. Permanency, more permanent, doesn't equate to the best interests. More permanent, private guardianship is an accepted form in the juvenile court of permanency, and it has standards which allows the court to review. In fact, it's probably a better situation because it can be undone provided a substantial circumstance is changed. If that circumstance never happens, you never have to deal with it. But once you do an adoption, it's permanent. You can't undo it. You may not even be able to find the parties again because the adoption actually allows the parent to change the names, leave the state, only have to register in a registry that when the child becomes 21, they can possibly find the parent. I just ask that we consider that this is truly the death of a family here. So, the strict scrutiny requires that a law requiring an individual of fundamental liberty must be narrowly tailored and must use the least restrictive means to meet the government's interests. On its face, 2-2-8 is in violation of substantive due process because it doesn't allow the trial court to even consider some of the other permanency goals which are listed after adoption, which would be guardianship, independence, and substitute care pending, or home environment not appropriate. Thank you. Private guardianship is a less restrictive form than adoption. It's recognized by the GCA as a term of permanency. While I understand the substantive due process is difficult to establish, it is clear that the written law does not allow a court to consider all goals that may be in the best interest of the minor. And that is what is supposed to be paramount in the Juvenile Court Act, is the best interest of the minor. If you really want to save five minutes, unless there are more questions, I think you need to save the rest of your time. Okay. Or make your last final point. Going through, just going through the brief analysis of the Eldridge, we have established that this is a fundamental right for both the minors and the parent. To establish that to have a child-parent relationship and to have a parent-child relationship are arguably fundamental rights of both. And we need to understand that the error is, the risk of error is unnecessarily severing those ties of the family. When you sever the ties of the child and the parent, you sever the ties between the other siblings also, which are some of the issues that should be considered in the best interest analysis. All you're asking is that the offensive language or the language which prohibits a total review of a sitting court be removed. There's not a big word. Is that substitute care should be available without having already considered adoption. Yes, because it is. And that's why you believe the statute is unconstitutional because it requires the court to first consider adoption. Yes. Thank you. And additionally. Very clear. As a procedural, it takes the whole process to the point that everything else piggybacks off of the fact that the goal is to destroy the family. That the goal is to terminate and set this kid for adoption. Thank you. Thank you. Thank you. Good afternoon to the court. Christopher Williams with the Public Guardian. May it please the court. I represent the four children in this case. I won't say their initials, but it's a 12-year-old girl, 11-year-old boy, another 9-year-old boy, and then 6-year-old boy. I would start out by certainly arguing that my friend in opposing counsel greatly overstated exactly what 2-28 does. Describing this as mandating the death of a family is deeply inaccurate. That's not what Section 2-28 is about. However, before I get to that, I would like to point out that there are certain hurdles that the mother needs to jump over before the court can even get to this question. Your Honor, Justice McVeigh, you mentioned mootness. I would start out just by briefly saying this issue of constitutionality was not raised in the trial court. We know that a facial challenge to a statute cannot be forfeited. It can be raised at any time. But an as-applied challenge to a statute can be forfeited. This Court should consider that fact at least. I would say it's a bit unclear from my friend in opposing counsel's brief whether this is a facial challenge or an as-applied challenge. There are two arguments. The second one states that Cook County's application of the statute is unconstitutional. I think it's a little bit difficult to figure out whether it's a facial challenge. But based on my friend in opposing counsel's argument, he seems to be attacking the statute on a facial basis. And that, of course, is a huge burden to meet. That requires showing that the statute cannot be constitutional in any possible situation. I want to briefly touch on the issue of jurisdiction, which is interrelated to the question Judge McVeigh posed about mootness. I think this Court does have a question of jurisdiction that it needs to answer in this case.  The motto is appealing a termination order. That's what the Notice of Appeal says. And the permanency order, when the goal was changed originally, that was in January of 2016. As this Court is well aware, the Supreme Court rules set forth a very straightforward and relatively strict procedure about how to appeal a permanency order. And that's under Rule 306A.5, Petition for Leave to Appeal. The time to claim that 2-2.8 is unconstitutional is when a goal is changed at a permanency order. There was a new goal set, though, after the termination. After the termination, they set the goal of adoption. That is correct, Your Honor. And as I read Mr. Sykes' argument, part of what he's saying is even after termination, I'm not sure I understand his argument, but I think he's saying even after termination, you shouldn't set a goal of adoption instead of guardianship, which is clearly a preference in 2-2.8. Right. Well, either way, if he's appealing the permanency orders of January 2016 or the permanency order set on the date of termination, which he just claimed that he was complaining about the termination order of the previous termination. That's what he said. Right. Even if we assume it could be either one, there's still a jurisdictional problem. And I'll say this. If he's trying to appeal, make an argument about the permanency hearing and the goal, the permanency goal that was set at the end of the termination hearing, then he still would have to petition under Rule 306A.5. And I believe this Court would have to directly overrule the case of Inouye V.M. Because there's no right to appeal, is what you're saying, of any permanency order. No right, only by petition. V.M. dealt with this. Actually, V.M. dealt with this is a First District case. It said it was a guardianship order, and one of the parents appealed the previous permanency order. And the court in V.M. said we don't have jurisdiction over that because Curtis B. 306A.5. So if it's the previous permanency order, it's just in this case. Either way, whether it's the old one or the new one, we don't have jurisdiction. So there's a jurisdictional problem here. But getting to the substance, first of all, I believe the better analysis here is a substantive due process analysis. Again, my friend and opposing counsel sort of set forth both, both the procedural under Matthews and the substantive. I don't see how Section 2-28's preference for adoption or termination of parole rights, or at least the fact that the court has to rule out earlier goals, I'm not sure how that's a process or a procedure. I think it's a substantive analysis. Either way, we win. In terms of the substantive analysis, we need a compelling state interest that's narrowly tailored to achieve that interest. Now, here's where I have to get to in an attempt to sort of present an accurate rendition of Section 2-28. Opposing counsel stated a couple times that the court is mandated to go towards TPR, or mandated to go to put in an adoption goal instead of a guardianship goal. This is obviously not the case because there are so many cases, well, there are many cases, not so many, but there are many cases where a parent is found unfit, but under a best interest determination, parole rights are not terminated and a guardianship goal is entered. And that might be a case where the child does not want to be adopted, or not have parole rights terminated, an older child. So a trial court can rule that out. The trial court is not put in a straitjacket by the legislature and mandated and predestined to cause the death of a family. I think his point is they're also, they're in no way mandated to put any weight on trying to keep some rights in place. Whatever rights can be kept in place consistent with the safety of the children, they're not, the court is not mandated to consider that. In fact, they're pushed in the opposite direction. In some ways that's true. I would have to say that this court would have to give great weight to the Illinois Supreme Court case of Inouye RC, which did not address permanency hearings, it didn't address 2-28, but it did apply strict scrutiny analysis to Ground P of the Adoption Act. So the Illinois Supreme Court pointed out, and this has been pointed out in other cases, I think M.M. from the Second District also pointed this out, that the stated goal of the Juvenile Court Act is to reunify children with their parents. So the first goal is return home. Second goal is return home within five months. And then once it becomes, well, once it gets to the point where the evidence shows that the parent is not making progress, then the court can enter a termination of parental rights goal if it's appropriate. And it has to rule out termination of parental rights before entering a guardianship goal. The compelling state interest here is just a general interest in the welfare of the children, number one, and number two, the compelling state interest is permanency for children. And my friend and opposing counsel did argue that guardianship is better because it allows children to sort of exist in this limbo state where they may or may not have contact with their parents. And what he's suggesting is that it's much better for a child to be in a state of guardianship for, until the child reaches 18, and to have anything possible happen that could affect his permanency. I think it's beyond axiomatic and beyond settled that Illinois law values permanency for children. And this is tied in with federal statutes that involve funding for Illinois programs. But the goal of the Juvenile Court Act is, well, I say the state's compelling interest is to provide permanency, stability, and finality. And the point of the best interest hearing is for the parent to present evidence that, okay, in this case, termination of parental rights is not the right way to go. I mean, that is the whole point. And the trial court is allowed to examine a wide range of factors. And so... The burden is not on the parents to show that. The burden is on the... Correct. The burden is on the state. To show that it is in the children's best interest. Correct. I'm sorry if I gave the wrong impression, but that helps me. And that comment helps my case. I'm not trying to do that necessarily. I'm just saying the burden is on you. I understand. The burden is on the state. I'm not going to be shy about pointing out that that point helps my case. But it does. I mean, the trial court has all these best interest factors that they can consider. And it is totally possible for them to choose guardianship. Okay. But since we all agree, I think, that it's a fundamental right. Our right to raise our children is a fundamental right. Mr. Sykes' point, which is that it's got to be narrowly tailored. Not just a compelling state interest, but what the state does has to be narrowly tailored. And guardianship is clearly more narrowly tailored in terms of how it restricts parental rights than adoption. It's clearly more narrowly tailored. What's the answer to that? My answer is that the Illinois Supreme Court in INRAE-RC, I think, held contrary to that point. And I can address that directly. I mean, because the Illinois Supreme Court in INRAE-RC talked about the idea of less restrictive alternatives. And what the parent argued in INRAE-RC was like, okay, you have a parent who's unfit under Brown P. So the parent has a mental disability that prevents the parent from discharging responsibilities. Why not be less restrictive and say, don't terminate parental rights? So the Illinois Supreme Court directly addressed that issue and said, wait a minute. The actual, first of all, when a parent is found unfit, the equation changes. The interest of the child and the parent diverges, and the sole issue becomes the best interest of the child. That's federal law, right? So the court in INRAE-RC addressed this less restrictive alternative argument and said that the Illinois legislature has provided the Adoption Act and the Juvenile Court Act to be construed in concert. And the best interest of the person, of the child, will be the paramount consideration. The JCA's purpose is to secure for each minor care and guidance, preferably in his or her own home, to preserve and strengthen the minor's family ties. The preferred result under the JCA is for the child to remain in his or her home in the custody of his or her parents. Termination should not be the default option, and I quote, the courts of Illinois are already sensitive to this concern. The court stated, once a court has found a parent unfit, the state's interest in protecting the child is sufficiently compelling to allow termination of parental rights. That is INRAE-RC from the Illinois Supreme Court. It's still good law. Never been overturned, and it's from the highest court in the land. And I believe that if this court were to accept the mother's argument, it would have to go through a certain series of conceptual gymnastics to distinguish RC. I really think that there would be a problem in figuring out how to distinguish RC from what my friend and opposing counsel is arguing. I can't emphasize enough, though, that the idea that termination and adoption is mandated and there's this fait accompli towards the death of the family, I can't emphasize enough how inaccurate that is. That is just simply not how it works in the juvenile court. Again, the trial court has a wide range of best interest factors to consider, and the trial court sometimes says, it's not in the best interest to terminate parental rights. I'm going to ‑‑ I've considered a termination of parental rights as a goal or as an act. I've considered adoption, and I've ruled it out. And I've come to guardianship for these reasons. And then that becomes a manifest way of the evidence argument. The possibility is there. The idea that this is a mandate is just simply not ‑‑ It's a preference. It's not a mandate, but it's a preference. And that's what he's saying. It's an unconstitutional preference. There is a huge difference between a mandate and a preference. I don't think he's arguing it's a mandate. We did not read his argument in saying it's a mandate. It just becomes a fait accompli because it's a preference. I wrote down in my notes mandate. If I heard it correctly, I apologize. So there we have it. Also, I mean, talk about a facial challenge to the statute. No, I think that argument fails. Talk about an as applied argument. Let's look at the evidence in the case. All the foster parents were open to sibling visits, maintaining sibling contact, that relationship. The foster parents were open to the possibility, based on the clinical appropriateness of it, of allowing the mother to see the children. And there's a long history of this case. The children had highly traumatized reactions to seeing the mother, probably as a result of the father's actions when father and mother were together. It looks that way. So under these facts, under this case, the trial court was well within its rights to say, okay, well, this sounds really good. These foster parents are open to preserving the family relationship. They're open to preserving sibling relationships. And this happens all the time. The appellate court in all the districts have noted trial court cases where this happens, where judges say, you know, looking at the best interest factors, I really like the fact that these foster parents have a good relationship with their parents and there's a bond, et cetera, et cetera. That's what happened in this case. I would say an as applied argument really is tantamount to a manifest way to the argument in terms of best interest in this case. And if you look at it in that way, you can see certainly that the trial court was well within its manifest way to the evidence. And I would simply say, I remind the trial court that the ‑‑ excuse me, I remind this court that the trial court relied heavily on a long line of cases in Illinois, from this district and other districts, I believe, saying that the lack of an adoptive placement is not a bar of determination of parental rights. So, again, I will wrap up. Unless there's more questions, specific questions. No? Okay. Again, this court should consider forfeiture. It should consider jurisdiction. It should put ‑‑ I ask for, you know, I don't mean to be presumptuous, but a clear statement about why this court has jurisdiction over a permanency order that is supposed to be appealed by petition, number one. And number two, if the court gets to the issue of substantive due process, NRA RC carries great weight, and I believe this court would have to really struggle to distinguish from that. This is not a mandate. It's not a ‑‑ it does not result in a fait accompli where the family dies. The trial court is given discretion. Once a parent is found unfit, the interests diverge. The Illinois Supreme Court has said that the state has a compelling interest in providing permanency finality and stability for the children. So, if there are no further questions, I thank the court. Thank you. Thank you. May it please the court, Assistant State's Attorney Gina DeVito on behalf of the people of the state of Illinois. The people would adopt the guardian's argument and just state that we do not agree with the mootness argument. We feel that the permanency planning hearing is not a final hearing or a final order, and therefore, this was the first proceeding that the issue could be appealed. So, you don't agree with their jurisdictional argument? Correct, Your Honor. So, you believe that the issue is squarely before us? Correct. Okay. And why is that? Because the permanency planning hearing order was not a final order. Right. It was not appealable as of right, so it became encompassed within the orders that followed. Correct. Okay. Thank you. Thank you. Again, briefly, Judge, these... Do you like what the state said about jurisdiction? I do. Yes. Actually, that's what I said. I think that's what I said. But in addition, I would say that one of the issues depends on what you find to be the state's compelling interest. I submit to the court, or we submit to the court, the mother and I, that the state's compelling interest is to provide a safe, stable, and nurturing environment for children. But come back to the constitutional issue, because that's really what you have here. The goal of adoption has to be ruled out prior to getting to G, but it's just a goal, and the trial court can easily rule it out. Yes. So, they can easily rule it out. Mr. Williams has argued here. They can easily rule it out, and in some courts, they do, and in some courts, they don't. In some courts, it is so overwhelming that they feel compelled to... I use the term mandate in my argument. In my brief, I actually use the term of... Preference. Preference, yes. And it is a preference that can be mandated based on... And there seems to be some need for direction that you don't have to terminate the rights. Maybe that's where the problem is. The argument is that it's not necessarily a preference. It's simply a goal. And then the goal, if that goal doesn't work, then the trial court is free to find substitute places. Well, the problem is, is that even when you change the goal, you lose rights as a parent. When you change the goal, if you have a return home goal, you're entitled to at least one visit per week in most cases. As soon as the goal turns to termination, you're only entitled to one goal a month or one visit a month. And so it's sort of a taking at that time. But if it starts putting you on a track, the services change. If the parent was supposed to be in services for, say, individual counseling, now the services in the counseling are going to be changed to loss. We're going to address your loss, your grief and loss, because the goal has changed to you're going to lose your kids. So the goal, we're not trying to reunify. We're not trying to do services that are going to promote reunification. We are going to do services to make you... Well, if the goal was anything other than return home, the services would change, right? Yes, that's what I'm saying. So it takes the process when you have to get to saying we're terminating your rights. We're putting you on hold until we terminate your rights when we could be figuring out a way to keep your family together. And you're saying that's constitutionally mandated? That's your position? The statute mandates that, I believe, yes. The statute prefers it. And there are some judges that actually have said on the record, I don't do private guardianships because it's not as permanent. And it didn't get in this particular case, but I know it's out there. And that's what I'm asking the court to address so that changing that language can help the service providers understand that termination is not the easy way out. Termination, if I don't provide these visits, then I can always say that they didn't make an effort. In this particular case, my client did everything she could do. She is intellectually disabled and can't handle four special needs kids. And I think she should have her rights. We think she should have her rights. Anything else? Thank you, everybody. Thank you. Really excellent briefing and a very good idea. Marianne, are you there?